UNITED STATES DISTRICT COURT
CIVIL MINUTES -- GENERAL

JS - 6

Case No.   **CV 14-917-JFW**                                                                    Date: May 30, 2014

Title:      In re: Rossco Holdings, Inc.
            Rossco Holdings, Inc. -v- Pacific Mercantile Bank, et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (IN CHAMBERS):   ORDER AFFIRMING BANKRUPTCY COURT'S ORDER GRANTING AWARD OF ATTORNEYS' FEES AND COSTS

On February 4, 2014, Appellant Rossco Holdings, Inc. ("Appellant" or "Rossco") filed a Notice of Appeal from the United States Bankruptcy Court's Order granting the Motion for Attorneys' Fees entered on January 30, 2014. On March 24, 2014, Pacific Mercantile Bank ("Pacific") and RBMN, LLC ("RBMN") (collectively, "Appellees") filed their Opposition Brief. On April 7, 2014, Rossco filed its Reply Brief. The Court finds this matter suitable for decision without oral argument. See Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15. After considering the parties briefs, the arguments therein, the voluminous record submitted by the parties, the Court rules as follows:

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Leonard M. Ross ("Ross") and his entity, Rossco[1] and certain of its affiliates were borrowers from Pacific. In 2010, Ross and Rossco entered bankruptcy and were affiliated debtors in bankruptcy cases venued in the United States Bankruptcy Court for the Central District of California.

---

[1] Rossco is wholly owned by Ross through his revocable trust.

Initials of Deputy Clerk  sr

At the outset of those bankruptcy cases, Rossco and Ross and certain affiliates were indebted to Pacific in excess of $15.3 million dollars as a result of various secured loans made during their business relationship. In order to ultimately settle the outstanding loans, Pacific, Ross and Rossco entered into a Confidential Settlement Agreement and Release dated October 18, 2010 ("the 2010 Agreement") which was approved by the Bankruptcy Court in November 2010. Pursuant to the Settlement Agreement, twenty lots in Calabasas were transferred by the Rossco affiliated owners to RBMN II, LLC ("RBMN II"), an affiliate of Pacific. On January 10, 2011, RBMN foreclosed on the lots and proceeded to market and sell the properties.

### A. The 2010 Agreement

The 2010 Agreement contained a merger clause which provided:

> Merger: "This settlement Agreement represents the entire agreement between the parties and all prior agreements, if any, shall merge for all purposes into this Settlement Agreement."

The 2010 Agreement also contained an express attorneys' fees provision which provided:

> Attorneys' Fees. Should any legal action be initiated to enforce or interpret any part of this Settlement Agreement, the "prevailing party" shall be awarded its reasonable legal fees as an item of costs against the non - prevailing party. A Party not entitled to recover its costs shall not be entitled to recover attorneys' fees.

The 2010 Agreement provided that it was binding on successors and inured to the benefit of any assignees of any party. Specifically, the 2010 Agreement provided:

> Binding on Successors. "This Settlement Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the administrators, executors, legal representatives, assignees, successors, agents, and assigns of the Parties."

### B. The Adversary Complaint

The attorneys' fees award that is at issue in this case resulted from litigation of an Adversary Complaint filed by Rossco on August 31, 2011 ("Complaint"). The Complaint named Pacific and RBMN II, and it alleged claims for relief for: (1) declaratory relief; (2) damages; and (3) injunctive relief.[2]

---

[2] The Complaint also contained a claim for relief for an accounting and turnover of property of the estate alleged against American Motorists Insurance Company, Los Angeles County

Initials of Deputy Clerk  sr

The Complaint was primarily based on Rossco's claim that as a result of the transactions contemplated by the 2010 Agreement, the named defendants, who were the new owners of the Calabasas properties, were contractually obligated to post bonds and replace the bonds that had been previously posted by Rossco in order to develop the Calabasas lots. Specifically, Rossco alleged that "as the new owner of Calabasas Properties, [Pacific]/RBMN was obligated to take certain actions in relation to continuing development of the Calabasas Properties, such as to maintain permits, replace bonds and deposits, and contract with the County as the new subdivider of the Calabasas Properties." Complaint, ¶ 30.

After the parties conducted extensive discovery, Pacific and RBMN II filed a Motion for Summary Judgment on May 6, 2013. In the Motion for Summary Judgment, Pacific and RBMN II argued that they had no obligation to post replacement bonds or deposits under the 2010 Agreement or under California or local law. In opposing the Motion for Summary Judgment, Rossco confirmed that its claims were based on the 2010 Agreement, and argued that one of the implied terms of the 2010 Agreement required Pacific and RBMN II to post replacement bonds and deposits. After extensive briefing of the Motion for Summary Judgment, the Bankruptcy Court granted summary judgment in favor of Pacific and RBMN II at a hearing on September 19, 2013. On October 9, 2013, Judgment was entered in favor of Pacific and RBMN II on the claims alleged in the Complaint against them.

Because Pacific and RBMN claimed that they were the prevailing parties in the Adversary proceeding, and Appellant had relied on the provisions of 2010 Agreement in the Adversary proceeding, Pacific and RBMN filed a Motion for Attorneys Fees on November 8, 2013 ("Motion"), seeking an award of reasonable attorneys fees in the amount of $373,905.22 and costs in the amount of $2,980.67 incurred in defending the Adversary Complaint. After the Motion was fully briefed, the Court heard argument on the Motion on January 23, 2014. After hearing extensive argument primarily from Mr. Ross, the Court granted the Motion and awarded fees in the amount of $220,902.35 ("Attorneys' Fees Order").[3]

The Bankruptcy Court made extensive findings of fact and fully explained the basis for the ruling on the Motion. In determining the award of attorneys' fees, the Bankruptcy Court carefully limited the attorneys fees to only those fees incurred after August 16, 2012 based on the terms of the 2010 Agreement. In addition, the Court refused to award any fees incurred by counsel in the

---

Department of Public Works, and Las Virgenes Municipal Water District. However, that claim for relief and those parties are not at issue in this appeal.

[3] In the Amended Findings of Fact re: Calculation of Attorneys' Fees and Costs filed on January 23, 2014 [Docket No. 144] ("Amended Findings"), the Bankruptcy Court corrected the amount awarded at the hearing, and awarded fees in the amount of $259,071.45 and costs of $2,980.62 for a total award of $262,052.07.

preparation of the Motion.

In ruling on the Motion, the Bankruptcy Court correctly framed the issue and made the following ruling:

> All right. Now I can turn to the motion. Fundamentally, this motion - - the contents of this motion is about whether - - what are the nature of the claims for relief that were made in the complaint. Are they based upon contract, do they turn upon interpreting a contract? And when I look at the complaint and when I look at the dispute between these parties in this adversary proceeding there were other defendants and other claims.
>
> But the fight, which was obvious from the summary judgment motion, from the motion to amend the pleadings which attempted to include claims for relief not based upon an interpretation of a contract or contractual obligations be they expressed or implied, the gravamen of all of the claims that were the subject of the summary judgment motion that were remaining in this adversary proceeding between these parties arose out of interpreting the settlement agreement - - the big settlement agreement between these parties. So yes, they're based upon contract. Now, that's just the first step of the inquiry.

In its ruling, the Bankruptcy Court fully addressed each of the arguments presented by the Rossco, and thoroughly explained the basis for each of his rulings. As to the reasonableness of the amount of attorneys' fees, the Bankruptcy Court made the following findings and ruling:

> Now I turn to the source of issues that are often - - that are generically raised in these kinds of motions with regard to the reasonableness of the attorney's fees and costs incurred. I've been given - - the first argument made by respondent has to do with the fact that the billing entries are redacted. There is case law saying it isn't necessary to review the actual as long as there is evidence given establishing what the nature of the services were so that the trial court, especially when it is the court have presided over the litigation itself, can make an adequate determination of the reasonableness of the services rendered. So I find that the redaction does not create a fatal obstacle. I find that the evidence given to me, which describes the services rendered and the amount of services rendered, the nature of the services rendered is adequate, it wouldn't be very much different from what would be included in the billing entries.
>
> I was given evidence with regards to the rates being comparable within the community. There is evidence given to me with regards to the

appropriate lode star factors having to do with how the matter was staffed and that the rates of the least expensive billing attorney comprised of a significant proportion, if not indeed a majority of this - - of the work done.

So - - and as I said before, and I reiterate in my finding, it's interesting when one looks back in hindsight one can think that a litigation was simple, but when you're in the midst of it and when you see how contentiously the parties litigated in a matter, and how long it too, and how many different procedural avenues were pursued in a litigation, in the midst of adjudicating this adversary proceeding it certainly didn't seem a simple one to me.

## II.   LEGAL STANDARD

"The district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions."  *In re Boyd*, 243 B.R. 756, 759 (N.D. Cal. 2000) (citing *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997)).  "Thus, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*."  *Id.* (citing *In re Southern Cal. Plastics, Inc.*, 165 F.3d 1243, 1245 (9th Cir. 1999)); *see also In re Gebhart*, 621 F.3d 1206*,* 1209 (9th Cir. Sept. 14, 2010) ("[T]he bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo.").

With respect to an award of attorneys' fees, "it has long been held that the trial court is in the best position to resolve disputes over legal fees," and therefore the standard of review is whether the court abused its discretion.  *In re Film Venturers Intern., Inc.*, 75 B.R. 250, 253 (9th Cir. BAP 1987).  Indeed, in the Ninth Circuit, a Bankruptcy Court's decision to award attorneys' fees is reviewed only for "an abuse of discretion or an erroneous application of the law."  *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 596 (9th Cir. 2006); *Oberle v. Whitley*, No. C 07-04334 WHA, 2008 WL 550274, at *1 (N.D. Cal. Feb. 27, 2008).  "Findings of fact are reviewed under a clearly erroneous standard, and findings of law are reviewed de novo."  *Oberle*, 2008 WL 550274 at *1.  "Accordingly, a bankruptcy court's award of attorney's fees will not be disturbed 'unless the bankruptcy court abused its discretion or erroneously applied the law.'"  *Id.* (quoting *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 705 (9th Cir. 2004), emphasis added).  The Court may affirm on any ground supported by the record.  *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## III.   DISCUSSION

On February 4, 2014, Rossco filed its Notice of Appeal of the Attorneys' Fees Order and Amended Findings.  The parties agree that the Bankruptcy Court had jurisdiction to enter the Attorney Fees' Order and that this Court has jurisdiction over this appeal.

Rossco, as it did in opposing the Motion, raises numerous issues on appeal and generally claims that the Bankruptcy Court erred by failing to understand and apply binding authority governing when and under what circumstances attorneys' fees and costs can be awarded pursuant to 11 U.S.C. §362(d)(1).

The specific issues raised by Rossco are as follows:

1) Did the Bankruptcy Court err in awarding 100 percent of the attorneys' fees, or any part thereof, claimed by PMB, RBMN, and RBMN II?

2) Did the Bankruptcy Court err in including RBMN II in the Attorneys' Fees Order and thereby effectively awarding attorneys' fees and costs to RBMN II, despite the fact RBMN did not submit its own attorneys' fees motion or bill of costs nor was it part of the Motion or Bill of Costs filed by Pacific and RBMN?

3) Did the Bankruptcy Court err in awarding attorney fees to Appellees when Appellees did not meet their burden of proof (a) allocating between alleged contract claims and tort claims, and (b) allocating between each of PMB, RBMN, and RBMN II?

4) Did the Bankruptcy Court err in granting attorneys' fees and costs to Appellees finding Pacific to be a prevailing party?

5) Did the Bankruptcy Court err in expanding, contrary to Federal and California law, the very limited scope of an "enforce or interpret" attorneys' fee provision?

6) Did the Bankruptcy Court err in granting 100 percent of attorneys' fees and costs of PMB, RBMN and RBMN II when the amount of fees and costs claimed is not reasonable?

7) Did the Bankruptcy Court err in failing to consider and properly weighing all of the evidence?

### A.    The Adversary Proceeding Was an Action on a Contract.

Although Rossco's challenges the Bankruptcy Court's ruling on several grounds, the dispositive issue in this appeal concerns whether the Bankruptcy Court abused its discretion in granting the Motion under applicable California law. More specifically, whether the Bankruptcy Court erred in concluding that the Complaint was an "action on a contract" within the meaning of California Civil Code §1717 and whether Appellees were the prevailing parties.

The Court begins its analysis with the undisputed rule that there is "no general right to receive attorney's fees . . . under the Bankruptcy Code." *In re Dinan*, 448 B.R. 775, 784 (9th Cir. BAP 2011). Under the "American Rule," a prevailing litigant is not entitled to recover its attorneys' fees except when authorized by contract or statute. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas*

*& Elec. Co.*, 549 U.S. 443, 448 (2007).  "In a case governed by the Bankruptcy Act . . . '[t]he character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy.' " *Id.*  Thus, "a 'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law.' " *Id.* at 451 (quoting *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 167 Fed.Appx. 593, 594 (9th Cir.2006) *vacated and remanded sub nom.*, 549 U.S. 443 (2007), and *vacated*, 525 F.3d 885 (9th Cir.2008)).

In this case, the "applicable" state law is California Civil Code §1717, which provides a reciprocal right to recover attorneys' fees by the party "prevailing on the contract" in any action on a contract.  Specifically, California Civil Code §1717(a) provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

Thus, under California Civil Code § 1717, the prevailing party may recover its attorneys' fees even if that party is not the party identified in the contract.  *Id.*  Section 1717 further provides that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."  Cal. Civ. Code §1717(b)(1).  "The court may also determine that there is no party prevailing on the contract for purposes of this section."  *Id.*  The California Supreme Court has provided the following guidance in applying Section 1717:

> Several sections within the California Code of Civil Procedure also apply to awards of attorney fees and costs.  Under section 1021, "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.  Cal. Code Civ. Proc. § 1021.  Section 1032(b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  Cal. Code Civ. Proc. § 1032(b).  "Costs" under section 1032 include attorney fees, when authorized by contract, statute, or law. Cal. Code Civ. Proc. § 1033.5(a)(10).  Finally, "[p]revailing party includes ... a defendant in whose favor a dismissal is entered."  Cal. Code Civ. Proc. § 1032(a)(4).

[I]n deciding whether there is a "party prevailing on the contract," the trial court is to

compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by a "comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions." *Hsu v. Abbara*, 9 Cal.4th 863, 876 (1995) (quoting *Bank of Idaho v. Pine Ave. Assocs.*, 137 Cal.App.3d 5, 15 (1982)). "[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' " *Id.* at 877.

Rossco argues the Bankruptcy Court erred in awarding attorneys' fees because the Complaint in the Adversary Proceeding was not an action on the contract but was a "tort action." The Court disagrees. The label of a particular proceeding in the Bankruptcy Court is not dispositive as to whether it can be seen as "an action on a contract' within the meaning of Section 1717. *See, e.g., In re Baroff*, 105 F.3d 439, 442-43 (9th Cir. 1997). *In re Baroff* creditors filed an action under Section 523 of Bankruptcy Code contending that their claims were non-dischargeable. Although debtor prevailed, the Bankruptcy Court refused to award attorneys' fees under a contract between parties and the district court affirmed.

The Ninth Circuit reversed and remanded for a determination of the amount of attorneys' fees to be awarded. The Ninth Circuit noted that while "[n]o general right to attorneys' fees exists under the Bankruptcy Code . . . a prevailing party in a bankruptcy proceeding may be entitled to an award of attorneys' fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id.* at 441. The Ninth Circuit specifically rejected the creditors' argument that a bankruptcy non-dischargeability proceeding could not be an "action on a contract," finding that the bankruptcy court had been required to adjudicate the rights of the parties under the contract to determine dischargeability. *Id.* at 442. In addition, the Ninth Circuit pointed out that "California courts liberally construe 'on a contract' to extend to any action as long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails." *Id.* at 442–43 (quotations and citation omitted).

As the Bankruptcy Court specifically found in its ruling on the Motion in this case, the "fight" or dispute between the parties was based on their 2010 Agreement. More importantly, in order to resolve that dispute, the Bankruptcy Court found that was it required to interpret the 2010 Agreement, which it did in granting the Motion for Summary Judgment in favor of Pacific and RBMN II. Accordingly, this Court has no difficulty in finding that the Bankruptcy Court correctly concluded that Pacific and RBMN II were the prevailing parties in an "action on a contract" within the meaning of Section 1717, and that it did not err in awarding the attorneys' fee.

### B. Rossco's Other Arguments Are Also Unpersuasive.

Rossco also argues that the attorneys' fees award by the Bankruptcy Court were

Initials of Deputy Clerk  sr

unreasonable, not properly allocated between contract claims and tort claims, and not properly allocated among the relevant parties.

### 1. The Attorneys' Fee Award Was Reasonable.

With respect to Rossco's argument that the amount of attorneys' fees awarded was unreasonable, the Bankruptcy Court carefully considered all of the evidence in making its determination of the appropriate amount of the award and fully explained the basis for the amount of the award. Specifically, the Bankruptcy Court expressly addressed Rossco's concern that the billing entries were redacted. Despite Appellees' offer to produce unredacted bills for *in camera* review, the Bankruptcy Court found that such inspection was not necessary based on the applicable case law:

> [T]he first argument made by respondent has to do with the fact that the billing entries are redacted. There is case law saying it isn't necessary to review the actual as long as there is evidence establishing what the nature of the services were so that the trial court, especially when it is the court that presided over the litigation itself, can make an adequate determination of the reasonableness of the services rendered. So I find that the redaction does not create a fatal obstacle. I find that the evidence given to me, which describes the services rendered and the amount of services rendered, the nature of the services rendered is adequate, it wouldn't be very much different from what would be included in the billing entries.

Thus, despite Rossco's argument to the contrary, there was no need for further investigation of the billing records, because the Bankruptcy Court was sufficiently familiar with the underlying litigation to assess the reasonableness of the request. *Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986) ("In many cases the trial court will be aware of the nature and extent of the attorney's services from its observation of the trial proceedings and the pretrial and discovery proceedings"); *Donahue v. Donahue*, 182 Cal. App. 4th 259, 276 (2010) (holding that "judges themselves are deemed to be experts on the value of legal services, and may rely on their own experience about reasonable and proper fees").

In addition, the fact that the billing records were redacted is irrelevant because "[i]n California, an attorney need not submit contemporaneous time records in order to recover attorney fees . . . Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Martino*, 182 Cal. App. 3d at 559; *Weber v. Langholz*, 39 Cal. App. 4th 1578, 1587 (1995) (absence of time records and billing statements did not deprive trial court of substantial evidence to support attorney fee award, where attorney declared attorneys' hourly rates, stated all fees incurred by clients were connected to attorneys' services, stated total amount of attorney fees incurred, and summarized work done). In this case, the Appellees provided the Bankruptcy Court with the November 8, 2013 Declaration of Gayle I. Jenkins and the January 16, 2014 Supplemental Declaration of Gayle I. Jenkins, which provided the evidence that was necessary for the

Initials of Deputy Clerk  sr

Bankruptcy Court to make a determination as to the reasonableness of the attorneys' fees requested, including "number of hours worked, billing rates, types of issues dealt with[,] and appearances made on [Defendants'] behalf." *Martino*, 182 Cal. App. 3d at 559. Thus, the Court concludes that the Bankruptcy Court did not abuse its discretion in making a determination as to the reasonableness of the fees requested based on the detailed descriptions of the services provided in the declarations submitted by counsel.

Furthermore, the record reflects that the Bankruptcy Court considered evidence as to the prevailing rates and proper lodestar amounts. Specifically, the Bankruptcy Court stated that:

> I was given evidence with regards to the rates being comparable within the community. There is evidence given to me with regards to the appropriate lode star factors having to do with how the matter was staffed and that the rates of the least expensive billing attorney comprised a significant proportion, if not indeed a majority…of the work done.

In fact, the evidence presented to the Bankruptcy Court demonstrated how Appellees attempted to keep costs down throughout the two years they were forced to litigate. For example, counsel allocated most of the work to associates and counsel deferred the majority of the work until the end of the case in the hope that a resolution would obviate the need for it. The evidence also demonstrated that the discovery and motion practice, once it became unavoidable, was complex and time consuming. Furthermore, Appellees presented evidence that the fees of their counsel, Winston & Strawn, which were voluntarily discounted by ten percent per hour billed, were reasonable in comparison to other large law firms with similar experience and specialization in complex litigation.

Finally, the Court agrees with the Bankruptcy Court's finding that the time and effort expended by Appellees' attorneys was reasonable, even though Rossco argues that its counsel, Mr. Ross, spent less than $20,000 in attorneys' fees. In making this determination, the Bankruptcy Court found that the evidence fully supported the time and effort expended:

> So - - and as I said before, and I reiterate in my finding, it's interesting when one looks back in hindsight one can think that a litigation was simple, but when you're in the midst of it and when you see how contentiously the parties litigated in a matter, and how long it too[k], and how many different procedural avenues were pursued in a litigation, in the midst of adjudicating this adversary proceeding it certainly didn't seem a simple one to me.

Accordingly, the Court concludes that the amount of attorneys' fees and costs awarded by the Bankruptcy Court was reasonable.

### 2. The Allocation of the Attorneys' Fees to Pacific Was Reasonable.

Rossco argues that the Bankruptcy Court's decision to award all of the attorneys' fees to Pacific was erroneous, because a portion of those fees were incurred by RBMN and RBMN II and that there should have been an allocation of the fees amongst the three parties. The Court disagrees. The Bankruptcy Court correctly held that "[Pacific] is the responsible party of the attorney's fees and costs on the bills. The other two entities are just captive entities of [Pacific], so there's no need to segregate or allocate between the defendants." As demonstrated by the invoices, Pacific was responsible for paying the costs of defending all three entities. All the legal work performed for PBMN and PBMN II was also performed on behalf of Pacific because RBMN, a wholly-owned subsidiary of Pacific, and PBMN II, an affiliate entity of RBMN, have no separate employees and are managed by Pacific. Thus, the representation of Pacific, RBMN, and RBMN II was factually and legally interrelated and it would have would be impossible to separate or allocate the attorneys' fees amongst the three entities. *See, e.g., Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1277-78 (2007) (court acted reasonably in not apportioning fees incurred in representing tenants with and without attorneys' fee clause in their leases because landlord's liability was so factually interrelated it was impossible to separate into compensable and noncompensable time units; the attorneys conducted research pertaining to the overarching legal issues common to all tenants, and had to perform the same research and analysis in preparing their case irrespective of the number of potential tenants benefitting from the work). Rossco failed to demonstrate that the attorneys' fees in this case were materially increased by the number of defendants.

Finally, Appellant's argument that the Court erred in not reducing the fee award because neither RBMN nor RMBN II were parties to the 2010 Agreement is contrary to the very terms of that agreement, which expressly states it is binding on and inures to the benefit of Pacific's assignees: "This Settlement Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the administrators, executors, legal representatives, assignees, successors, agents, and assigns of the Parties."[4] This provision of the 2010 Agreement would include any Pacific entity that was named in or answered the Complaint, such as RBMN and RBMN II.

Accordingly, the Court concludes that the Bankruptcy Court's allocation to Pacific of all the attorneys' fees awarded was reasonable.

### 3. Rossco Did Not Allege Any Tort Claims.

---

[4] Despite Rossco's arguments to the contrary, the Bankruptcy Court did not award 100 percent of the attorneys' fees incurred. The Bankruptcy Court's Order clearly states that the award of attorneys' fees was limited to those attorneys' fees incurred after August 16, 2012, pursuant to the terms of the 2010 Agreement, and that the attorneys' fees incurred in preparing the motion for attorneys' fees was also deducted.

Initials of Deputy Clerk  sr

With respect to Rossco's argument that the Bankruptcy Court erred in awarding attorneys' fees because the fees were not allocated between tort and contract claims, Rossco did not assert any tort claims against Appellees, and, thus, this argument is, at best, frivolous. As discussed extensively above, all of Rossco's claims – claims for declaratory relief, damages, and injunctive relief – against Appellees required interpretation of the 2010 Agreement to determine the existence of any obligation to post replacement bonds and deposits as claimed by Rossco. For example, the declaratory relief claim, which is a claim for equitable relief and not a tort claim, sought a conclusive determination "that the implied terms of the 2010 Settlement Agreement were that Defendants would replace the Bonds." Therefore, that claim required interpretation of the 2010 Agreement. In addition, Rossco claimed it was damaged as a result of Appellees' "failing to carry out [their] obligations under California law and local rules and regulations as the new owner and subdivider of the Calabasas Properties." Rossco argued that it was damaged by Appellees' failure to replace the bonds and collateral "consistent with the transactions effectuated by the 2010 Settlement Agreement," which required the Bankruptcy Court to evaluate Rossco's interpretation of the terms of the 2010 Agreement. Finally, Rossco's injunctive relief claim, also an equitable claim, was predicated on Rossco's belief that the parties' contractual relationship obligated Appellees to post replacement bonds pursuant to "the implied terms of the 2010 Settlement Agreement." Although Rossco did not specifically allege a direct breach of contract claim, nonetheless its claims sought to interpret and enforce the 2010 Agreement based on its theory that the 2010 Agreement contained implied bond-replacement provisions and that Appellees had breached those provisions. Therefore, the Court concludes that the core facts giving rise to the bond-replacement obligation claims were based on the 2010 Agreement, as Rossco represented in its discovery responses and argued in its Opposition to the Motion for Summary Judgment.

However, even assuming *arguendo* that some of the claims could be construed as tort claims, which the Bankruptcy Court correctly refused to find, Appellees would still be entitled to fees for the claims Rossco alleged against them. As explained above, Appellant's action was fundamentally based upon enforcement of the 2010 Agreement, and even if a contract does not so provide, attorneys' fees may be awarded for work performed on non-contract causes of action if the action is fundamentally contractual in nature. *See Beeman v. Burling*, 216 Cal. App. 3d 1586, 1608 (1990) (allowing award of fees on tort causes of action in a suit "fundamentally. . . based upon the lease"). In addition, when contract and tort claims are combined, a party is entitled to attorneys' fees on all claims where they are interrelated such that it would be impractical or impossible to separate the time spent on litigating both claims. *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1111 (1996). It is well-established that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed," and "need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories." *Douglas E. Barnhart, Inc. v. CMC Farbicators, Inc.*, 211 Cal. App. 4th 230, 250 (2012). Thus, even if the Bankruptcy Court had determined that some of Rossco's claims were tort claims, Appellees are entitled to all of the requested fees because the claims all involve the same "common core of facts," namely, the alleged bond-replacement obligation common to each of the claims. *Id.*

Initials of Deputy Clerk  sr

Accordingly, the Court concludes that the Bankruptcy Court correctly determined that there should be no allocation of attorneys' fees between tort and contract claims because Rossco did not allege any tort claims. The Court also concludes that even if Rossco had alleged a tort claim, the Bankruptcy Court's award of attorney's fees was correct.

## IV.  CONCLUSION

As to each of the remaining issues raised by Rossco, the Court concludes that the Bankruptcy Court did not clearly err in making any of its factual findings, and did not erroneously apply the law or abuse its discretion in arriving at the decision to award attorneys' fees. The Court has considered each of the arguments presented by the Rossco, and concludes that the Bankruptcy Court did not abuse its discretion and did not erroneously apply the law in making its decision to award attorneys' fees. Accordingly, the decision of the Bankruptcy Court is **AFFIRMED**.

IT IS SO ORDERED.

Initials of Deputy Clerk  sr